223 So.2d 505 (1969)
STATE of Louisiana ex rel. Louise S. KORNS
v.
The BOARD OF ZONING ADJUSTMENTS OF the CITY OF NEW ORLEANS.
No. 3609.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1969.
Rehearing Denied June 2, 1969.
*506 Jorda S. Derbes, New Orleans, for Louise S. Korns, appellant.
Louise S. Korns, New Orleans, for intervenors-appellants.
L. M. Lamar, New Orleans, for Uptown Civic Ass'n, amicus curiae.
John M. Coxe for Lower Garden District Protective Ass'n., amicus curiae.
John W. Ormond, New Orleans, for Crescent Council of Civic Ass'n, amicus curiae.
Claude Kohler for Peniston-General Taylor Ass'n, amicus curiae.
Alvin J. Liska, Posey R. Bowers, New Orleans, for appellees.
Leonard B. Levy, Morris Wright, Stephen B. Lemann, Albert Mintz, Walter M. Barnett, Harold B. Carter, Jr., New Orleans, for intervenor-appellee.
Before HALL, GARDINER and LeSUEUR, JJ.
LeSUEUR, Judge.
The facts pertinent to this litigation are as follows:
During the summer of 1968, Freret and Wolf, architects for Touro Infirmary ("Touro") applied to the Director of the Department of Safety and Permits of the City of New Orleans for a building permit to erect a Community Mental Health Center on Touro's property at 3500 Chestnut Street. The permit was denied because the property was zoned M-1 with a height limitation of 35 feet and a prescribed rear yard depth requirement of 25 feet and the plans for the building showed a total height of 72 feet and a rear yard depth of 10 feet. On August 6, 1968, Freret and Wolf applied to the Board of Zoning Adjustments ("Board") for a variance that would allow the erection of a building 72 feet in height and a rear yard depth reduction to 10 feet. At a public hearing on August 15, Albert Wolf of Freret and Wolf requested that the variance be issued because under a proposed Zoning Ordinance the property would be rezoned to allow the desired construction and by getting the variance the building could be started immediately in order that indispensible Federal funds could be secured to assist in financing its cost. Mr. Wolf did not allege any "unusual and practical difficulties or particular hardship" other than the press to start in order to receive Federal funds and the fact that the *507 variance would allow the construction of an extra floor. Mrs. Korns opposed the issuance of a variance because the representatives of Touro did not allege any difficulties due to the shape of the lot, etc. and also because her property would be damaged by suffering loss of air and light.
The Board inspected the property in question and studied the architect's plans for the building. On August 21, the Board granted the requested variance stating:
"* * *
"WHEREAS, although request covers a structure 72' in height, the main portion of the proposed building will be 4 stories in height, or a total height of 45' 6"; that portion of the building which will be 26' 6" additional height will not be for the full size of the building, being approximately 32' × 56' and located in the center of the building. This area will house elevators, stairway and mechanical equipment; and
"WHEREAS, this matter has been carefully considered and it is the concensus of this Board that the owners are entitled to the relief herein sought. This Board believes that the structure as planned is in keeping with the intent and purpose of the Zoning Ordinance, and that the granting of the requested variations will in no manner adversely affect any surrounding, or adjacent properties, and that denial would impose undue hardship; and
"WHEREAS, in considering this application this Board is of the opinion that the variations granted will in no manner impair an adequate supply of light, air or ventilation to adjacent properties or unreasonably increase the congestion in public streets or increase the danger of fire or endanger the public safety, or unreasonably diminish or impair established property values within the surrounding area, or in any other respect impair the public health, safety, comfort, morals, or welfare of the inhabitants of the City of New Orleans; and
"WHEREAS, it is the further opinion that the proposed structure will house a facility urgently needed by the Community as a whole; * * *"
Mrs. Korns then petitioned the Civil District Court for the Parish of Orleans for a writ of certiorari to review the Board's issuance of the requested variance. She alleged that the Board had exceeded its authority because Touro through its architects had not shown: (1) any hardship due to an irregular shape of the lot, topographical or other physical conditions; nor 2) that a strict application of the Ordinance terms would impose upon them unusual and practical difficulties or particular hardship. She stated that Touro could build a mental health center that conformed to the present Zoning Ordinance on 3500 Chestnut Street and that the future adoption of a proposed Zoning Ordinance was not sufficient basis for the issuance of a variance. She also asked that the Department of Safety and Permits and the City of New Orleans be joined as parties defendant with the Board of Zoning Adjustments.
The writ of certiorari was issued on September 11, 1968. On October 4, 1968, a petition of intervention was filed by a number of residents of the area around 3500 Chestnut Street, seeking to have the District Court reverse the Board's issuance of the variance. On October 8, 1968, Touro Infirmary filed a petition of intervention and third party opposition and exceptions of no right or cause of action, alleging that a denial of the variance would cause the interests of Touro Infirmary to be seriously and adversely affected and that petitioner has not shown any injury or loss of legal rights. On October 21, 1968, the City of New Orleans filed exceptions of no right or cause of action, alleging that petitioner did not show any injury or loss of legal rights that have resulted from the variance being issued. On October 21, the City of New Orleans and Touro both filed exceptions of no cause or right of action against the neighbor intervenors alleging lack of legal interest. On October 24, 1968, additional *508 neighbors filed a petition of intervention which was also excepted to because of lack of legal interest. On November 13, Mrs. Korns filed an exception of no right or cause of action to Touro's intervention and third party opposition for failing to disclose a legal interest in the proceedings.
On November 15, the matter was tried and on November 20, judgment was rendered. The exceptions of Touro and the City of New Orleans against the neighbor intervenors were maintained since they had intervened more than 30 days after the Board's ruling and under the provisions of both LSA-R.S. 33:4727 and Art. XXVII of the Zoning Ordinance their intervention had not been filed timely. The exceptions filed by all parties defendant, other than the City of New Orleans, were maintained and the suit as to all defendants, other than the City of New Orleans, was dismissed. Mrs. Korns' exceptions against Touro were dismissed, as were the exceptions of Touro and the City of New Orleans in opposition to Mrs. Korns. The trial judge then affirmed the Board's issuance of the variance, and it is from this judgment that Mrs. Korns and her neighbor intervenors have appealed.
Appellant argues four points on appeal, the main thrust of her position being that the Board of Zoning Adjustments, under the provisions of the Zoning Ordinance of the City of New Orleans Article XXVII, § 4(3) (a) & (b), can grant a variance to the Zoning Ordinance only when there are unusual and practical difficulties or hardships. Since Touro Infirmary, through Freret and Wolf, did not allege any hardships, other than financial, the Board was without the authority to grant the requested variance and the District Court's judgment affirming that ruling was erroneous because the Board had abused its discretion and violated the regulations governing its functions.
This Court agrees with appellant that the Board of Zoning Adjustments did exceed its authority and abuse its discretion when it granted the variance requested for the building planned for 3500 Chestnut Street. From the inception of its action before the Board, Touro determined that the variance needed for its proposed building was for its total height of 72 feet and for the reduced rear yard depth of 10 feet, and that the purpose for the variance was to build a building that would conform to a proposed Zoning Ordinance, the provisions of which Touro sought to take advantage of for the financial benefit of securing Federal funds to reduce the costs to Touro.
Albert J. Wolf, Jr., of Freret and Wolf represented Touro before the Board and gave the following reasons as the bases of Touro's request for the desired variance.
"The property here is presently zoned M-1; under the proposed Zoning Ordinance it will be zoned as M-S. What we are asking you is that we be permitted to build this building in accordance with the M-S Ordinance, the proposed ordinance M-S and in this way we will be able to accomplish a great deal more in the building because we can get on one floor more than we would under M-1.
"The urgency on this is that although the building is presently only in the sketch stage, the Federal Government participating in the cost of this building, has told us that we must be ready to go under contract by the 1st of January. In other words, if we are not, we are very liable to lose their participation in the cost of the building."
After visiting the property in question, the Board granted the variance on August 21, 1968, giving as its reasons: 1) the compliance of the proposed building with the intent and purpose of the Zoning Ordinance; 2) the failure of the proposed building to adversely affect the adjacent properties; 3) the denial of the variance would impose undue hardship; 4) the variation would not increase congestion or danger of fire or endanger the public health, safety, comfort, morals or welfare of the inhabitants of the City of New Orleans; and 5) the proposed structure will house a facility *509 urgently needed by the Community as a whole.
The District Court reviewed the Board's decision and considered Mrs. Korns' objections to that decision as being twofold: (1) that the Board had exceeded its discretionary powers and (2) that her property would not receive sufficient sunshine for her gardening activities. The trial judge then gave reasons for denying both areas of objections.
With regard to the sunshine, light and air objection, the trial judge found that although one neighbor could not impair an adequate supply of light and air to the adjoining property by the erection of a building, nowhere in the Zoning Ordinance is there a requirement that a new building guarantees the adjoining property owner sufficient sunlight for the purpose of growing flowers and vegetables or pursuing any aesthetic undertaking. He held that the height variance necessary was only 10 feet 6 inches since the main building, exclusive of penthouse and elevator housing, was 45 feet 6 inches in height and therefore only 10 feet 6 inches over the height limit of 35 feet of the present Ordinance. He then found that this increase would not impair petitioner's light and air especially since the building was to be set back from the property line 7 feet more than the legal minimum.
With regard to the Board's abuse of its discretionary powers, the trial judge recognized the facts that an Ordinance that has not been adopted is not controlling on variance applications and "that regardless of any other factor if the Board of Zoning Adjustments had no right to grant a variance in height, or otherwise, then the amount of that height is immaterial." Nevertheless he held that, since petitioner had not proven that the granting of the variance would cause her injury, the Board had not abused its powers because they had considered the health, safety, morals, etc. and the general welfare of the community. The trial judge ruled that the character of the district involved was that of a medical center and took judicial notice of the "crying need for more and more medical facilitiesnot only in this areabut throughout the world." He also held that "the only restriction which the Legislature has placed upon the municipalities enacting Zoning Ordinances is that it provide adequate light and air." For these reasons he held that Touro had shown a valid bases for issuance of the variance.
This court is of the opinion that the District Court erroneously affirmed the ruling of the Board of Zoning Adjustments. The only bases for the Board granting a variance in the present case are found in Art. XXVII, § 4(3) (a) (b), which state:
"3. The Board shall have the authority to grant the following variances:
"a. Permit a variance in the yard requirements, height restrictions, or lot-area-per-family requirements of any district, but only where there are unusual and practical difficulties or unnecessary hardships in the carrying out of these provisions due to an irregular shape of the lot, topographical, or other physical conditions, provided such variance will not seriously affect any adjoining property or the general welfare.
"b. Authorize upon appeal, whenever a property owner can show that a strict application of the terms of this Ordinance relating to the use, construction or alteration of buildings or structures or the use of land will impose upon him unusual and practical difficulties or particular hardship, such variances of the strict application of the terms of this Ordinance as are in harmony with its general purpose and intent, but only when the Board is satisfied that a granting of such variance will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a deviation from the comprehensive plan as established by this Ordinance, *510 and at the same time, the surrounding property will be properly protected." (Emphasis supplied.)
Neither Touro nor its architects have alleged any difficulty due to the irregular shape of the lot, topographical, or other physical conditions and, in fact, the property in question here is rectangular in shape and not irregular in any manner, thus disposing of (3) (a) as a basis for granting the variance.
Neither Touro nor its architects have alleged that the construction of the proposed structure will impose upon them any unusual and practical difficulties or particular hardship or that it will alleviate some demonstrable and unusual hardship or difficulty as required by § 4(3) (b). Touro primarily desired the variance to build a building now that would conform to a proposed Zoning Ordinance that has not been enacted to this date, with their reason for granting it being the urgent need to secure Federal funds to assist with its financing. They also alleged that they would not be able to use the basic facilities of the Mental Health Center to the full capacity as the height limitation restricted the floor space available.
These reasons are not sufficient to justify the granting of the requested variance. The argument that if Touro cannot build as per their plans they cannot build at all and will lose the Federal funds desired is not substantiated by the record. Touro can presently build a Mental Health Center at 3500 Chestnut Street without any variance being obtained as long as it is built no higher than 35 feet and has a rear yard depth of 25 feet. There is no allegation that the Federal funds sought by Touro are contingent upon the erection of the building as planned or any other building which would exceed the limitations of the present Zoning Ordinance. Touro states that it will not be able to use the basic facilities to the full capacity if the variance is not allowed. The plans as submitted are not the only possible choices as to design of the Center, as Touro would have this court believe. Usable areas within a restricted square foot area is always increased by additional height; therefore equating building height with utilizing space available to its fullest capacity is an erroneous basis for Touro's variance.
The securing of financing and the most advantageous utilization of space are not the types of hardship or difficulty envisioned by the drafters of the Zoning Ordinance. In State ex rel. Phillips v. Board of Zoning Adjustments of the City of New Orleans, 197 So.2d 916 (La.App.4th Cir. 1967), this court stated at pages 919 920:
"According to its own architect, Mercier could have accomplished its purpose by construction which did not violate the prohibition against two main buildings on one lot. Therefore, in the absence of a showing that approval of such nonviolative construction could not have been obtained from the Vieux Carre Commission, we cannot hold appellant suffered financial loss in being denied an opportunity to obtain an increased return from its property. Even if financial loss had been shown, such loss is only a factor to be considered in determining hardship and will not, standing alone, constitute a hardship sufficient to justify a variance. 101 C.J.S. Zoning § 293; 58 Am.Jur., Zoning § 189; 2 Rathkopf, op cit supra; § 45-8, 13-14; 1 Metzenbaum, op cit supra; Annot. 168 A.L.R., Zoning 13, 30; 2 Yokley, Zoning Law and Practice, § 15-12. * * *
"But under the specific quoted provisions of the Zoning Ordinance the Board has authority to grant a variance only when there is `unusual' or `particular' hardship imposed on the property owner seeking the same. And here the hardship referred to, the requirement of conformity to two separate and sometimes conflicting standards of construction, is neither `unusual' nor `particular' to Mercier. It is common to all property owners in the zoning district in which Mercier's lot is located and therefore is not *511 a hardship which justifies the granting of a variance. To hold otherwise would have the effect of destroying the zoning district. 101 C.J.S. Zoning § 291; 58 Am. Jur., § 203, 204; 2 Rathkopf, op cit supra § 45-3."
Touro has objected to Mrs. Korns' attempt to prevent their being granted a variance because she has not alleged any injury other than her loss of light and air, a circumstance that will not be affected according to the rulings of the Board and the District Court. Under Zoning Ordinance Art. XXVII, § 4(3) (b) the protection of surrounding property from damage is considered but only after the party desiring the variance has shown that they will suffer difficulty or hardship if the Ordinance is strictly construed. Touro wants Mrs. Korns to bear a burden of proof in opposition to their variance when they have not borne their burden of proof in support thereof. But Mrs. Korns did not have to show any loss to herself to successfully defeat the issuance of the variance here. Since Touro did not allege difficulty or hardship such as is required, the Board did not have the authority to grant the variance and Mrs. Korns could oppose the issuance without alleging any injury to her property.
This court is of the opinion that only after Touro has alleged and proven their difficulties and hardships should the Board then consider the effect that their issuing a variance would have on surrounding property. Since Touro has not shown that they will suffer hardship other than of a monetary or space utilization nature, the Board did not have the discretion to issue the requested variance and the District Court erred in upholding the decision of the Board and that decision is hereby annulled.
The neighbor intervenors appealed the judgment dismissing their intervention because it was filed more than 30 days after the ruling of the Board of Zoning Adjustments and therefore was not timely filed. They claim that under LSA-C.C.P. Article 1091, they have the right to intervene in the action pending before the District Court and that they are not appealing from the ruling of the Board. They also claim that Touro's intervention should be governed on the same basis as is theirs and that either both interventions should be allowed or neither be allowed.
Although cognizant of these issues, the court is of the opinion that these issues do not require its determination since we have found that the ruling of the Board of Adjustments should be reversed. These issues were ancillary to the main question of the correctness of the Board's ruling and with that ruling being annulled the other issues are also resolved.
The judgment of the District Court affirming the ruling of the Board of Zoning Adjustments granting a variance to Touro Infirmary for the proposed building is reversed and the ruling of the Board is annulled. Each party will bear their costs of appeal.
Reversed.