SAMUEL, Judge.
The Protestant Home for Babies, an adoption agency licensed to perform child-placing functions by the Louisiana Department of Public Welfare, owns and operates a nursery at 1233 Eighth Street in the Garden District of the City of New Orleans and a maternity residence for unwed mothers on property adjoining the nursery. The operation is a legal, nonconforming use in a district zoned “B-2 Family” under the present zoning ordinance, the Comprehensive Zoning Law of the City of New Orleans of 1953, as amended. On April 29, 1969 the Home applied to the Department of Safety & Permits of the City of New Orleans for a building permit to allow renovation and restoration of the maternity residence in conformity with submitted architectural plans. The application was denied on the ground the proposed work was in violation of the requirements of the zoning ordinance in that it would result in an increase in the cubic content and square foot area of the residence.
The Home then applied to the Board of Zoning Adjustments for a variance from the requirements of the ordinance in order to permit execution of the project. On June 19, 1969, after a public hearing in conformity with law, the Board unanimously granted the requested variance. Thereafter, on July 18, 1969, the Garden District Association filed a petition for a writ of certiorari in the Civil District Court for the Parish of Orleans seeking to have the action of the Board set aside and vacated. The writ directed to the Board was granted by the trial court on the same day the petition was filed. The Home intervened in the suit on August 11, 1969.
After trial, and after the district judge had inspected the property, there was judgment in favor of respondents and in-tervenor, dismissing relator’s petition at its cost. Relator has appealed. In essence, it contends the trial court erred in: (1) overruling and dismissing relator’s exceptions to the intervention of the Home; (2) upholding the Board’s decision for the reason that the Board was without authority to grant the variance; and (3) failing to hold the enlargement of a non-conforming use to a single property owner is unconstitutional.
The only evidence presented at the trial, other than documentary, is the testimony of three city and intervenor witnesses: Mrs. Erna Deiglmayr, executive director of the Home; Mrs. Robert Boylan, a member of the Home’s board of directors; and Mr. Jules de la Vergne, the Home’s architect. Appellant offered no testimony. Our review of the record reveals the following facts:
The Home has operated at its present location since its organization in 1926. Stay in the Home by each of the unwed mothers is of comparatively short duration and all medical treatment and deliveries take place at a local hospital. The maternity residence, a two-story Victorian frame house, is in a state of general deterioration and in need of renovation and restoration, even to the extent that the building is so dilapidated there is hardly a structural, architectural or mechanical feature in good operating condition.
These conditions cannot be alleviated without structural alteration or removal to another area and it appears the Home is unable to accomplish the latter. Following denial by the Department of Safety & Permits of a prior application for a building permit in 1965, the Home attempted to obtain property elsewhere in New Or *269 leans but no suitable location could be found at any price the Home could afford. Complicating the problem of removal to another location is the fact that licensing regulations of the Department of Welfare prohibit building, purchasing or reestablishing a maternity home in a commercial, industrial or rooming house area. Since rooming houses are a permitted use in a “C-4 Family” and in less restrictive districts, and as there is an obvious need that the Home be reasonably close to a hospital and medical services, removal to another location would be virtually impossible without a continuation of the nonconforming use.
The present facilities are clearly inadequate. There are only four bedrooms, of various sizes, for use by sixteen residents, at times making it necessary for seven to sleep in the largest bedroom. There are only two interior bathrooms for use by sixteen residents, all of whom are in the last four months of pregnancy. There are no closets available. There is no space for desks or other facilities; although many of the residents are of school age and attend school. The inadequate space and crowded interior preclude any reasonable measure of privacy for the residents. And finally, there is no elevator in the building although climbing stairs is difficult for the. maternity residents and may be injurious to their health and safety.
The alteration and renovation permitted by the variance granted would include complete rewiring and replumbing, erection of partitions for privacy, a small private bedroom for every two residents with access to a private bathroom, a small closet for each resident, an elevator, and a recreation room on the first floor. The sole structural enlargement permitted is the extension of an existing second floor over an existing first-story wing, resulting in slightly less than a 12% increase in cubic content and square foot area of the building. The plans do not contemplate any increase in the facility’s sixteen resident capacity, the maximum number now allowed under the Home’s license.
The Board of Zoning Adjustments expressly found the proposed work would not change the appearance of the building or use any additional yard area; would not adversely affect surrounding properties; would not impair an adequate supply of light and air to any adjacent property or unreasonably increase congestion in the public streets; would not increase the danger of fire, or endanger the public safety, or unreasonably diminish or impair established property values in the surrounding area; and would not in any respect impair the public health, safety, comfort or welfare of the inhabitants of the City of New Orleans as outlined in the zoning ordinance. The Board further found that to deny the Home the right to make the proposed improvement “would be most unjust and impose unnecessary hardship upon them”.
We find appellant’s first contention, relative to the trial court judgment overruling its exceptions to the intervention of the Home, is without merit. The exceptions were based on a provision contained in the city zoning ordinance, relative to judicial review of decisions of the Board of Zoning Adjustments, which reads:
“Any person or persons, or any officer, department, commission, board, bureau, or any other agency of the City of New Orleans jointly or severally aggrieved by any decision of the Board of Zoning Adjustments may present to the Civil District Court of the Parish of Orleans, within thirty (30) days after the filing of the decision in the office of the Board, a writ of certiorari asking for such relief and under such rules and regulations as are provided for such matters in appropriate legislation of the State of Louisiana.” Article XXVII, § 6, Comprehensive Zoning Law of the City of New Orleans of 1953, as amended. (Emphasis ours). *270 Appellant argues that under this provision the Home had the right to file its intervention only within the prescribed 30 day period and as more than 30 days elapsed between the Board’s decision on June 19, 1969 and the filing of the intervention by the Home on August 11, 1969, the intervention should have been dismissed, citing State ex rel. Korns v. Board of Zon. Adj. of New Orleans, La.App., 223 So.2d 505.
The provision has application only to those who, through judicial review, seek some relief not given to them by a Board decision. Here the Home was not “aggrieved” by the decision. To the contrary, the action of the Board granted to the Home all of the relief it requested and the Home had no reason to desire or seek any change therein. It is quite clear the provision requiring the filing of the petition within 30 days does not apply to the Home, a completely successful applicant before the Board, and does not preclude the Home’s petition of intervention.
Korns, the cited case, is not authority for appellant’s position. In that case an intervention was filed by neighboring property owners who joined with the relator in seeking a reversal of the Board’s issuance of a variance. Unlike the Home in the instant case, the neighbors were “aggrieved” by the granting of the variance. In addition, in Korns the court specifically did not decide the issue for which the case is cited here.
We also do not agree with appellant’s second contention, that the Board was without authority to grant the variance. Under all of the above recited facts, which are uncontradicted, we are satisfied the Home suffers difficulties and hardships sufficient to justify the variance granted by the Board under the city ordinance which, in pertinent part, reads as follows:
“3. The Board shall have the authority to grant the following variances:

b. Authorize upon appeal, whenever a property owner can show that a strict application of the terms of this Ordinance relating to the use, construction, or alteration of buildings or structures or the use of land will impose upon him unusual and practical difficulties or particular hardship, such variances of the strict application of the terms of this Ordinance as are in harmony with its general purpose and intent, but only when the Board is satisfied that a granting of such variance will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a deviation from the comprehensive plan as established by this Ordinance, and at the same time, the surrounding property will be properly protected.
* * * ” Article XXVII, § 4, Comprehensive Zoning Law of the City of New Orleans of 1953, as amended. (Emphasis ours).
In our opinion the Board is empowered by the above quoted provision to grant an otherwise proper variance to permit structural alteration of a building already devoted to a legal, non-conforming use. Without excepting non-conforming uses, it authorizes the Board to vary the requirements of the zoning law relative to the use, construction or alteration of buildings or structures whenever sufficient difficulties or hardships are shown. Thus the authorization includes authority to permit structural alteration of a building already containing a legal, non-conforming use. No provision to the contrary in the zoning ordinance has been called to our attention and we know of none. Nor do we know of any reason why the requirements for a variance to extend a non-conforming use *271 should not be the same as those for any other variance from the literal application of the zoning law. Rathkopf, The Law of Zoning and Planning (3d Ed.) Ch. 59-7; Anderson, American Law of Zoning, (1968) p. 416.
Appellant’s third and final contention was mentioned without elaboration in oral argument and is contained in appellant’s brief only as a bare statement repeated in a syllabus and in the specification of errors. As so stated the contention is that the action of the Board “ * * * in allowing an enlargement of a nonconforming operation and use of realty to one property owner is unconstitutional, inasmuch as it violates the rights, privileges and equal protection of the laws afforded to adjacent property owners and residents under the interpretation of the provisions of the Fifth (Due Process) and Fourteenth (Equal Protection) Amendments to the Constitution of the United States of America.” Five United States Supreme Court cases are cited under the syllabus.
We have read the five cited cases and find they do not support the contention. Nor do we know of any manner in which the enlargement of a non-conforming use of realty to one property owner violates the Fifth and Fourteenth Amendments; we have the benefit of no argument, orally or in brief, on the issue. As we are not disposed to speculate, or put up straw men simply for the purpose of knocking them down, and as we know of no reason why the action of the Board in the instant case should be declared unconstitutional (see Plebst v. Barnwell Drilling Company, 243 La. 874, 893, 148 So.2d 584, 591), we reject the contention.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.