327 So.2d 140 (1976)
STATE of Louisiana ex rel. Murray M. PITTS et al.
v.
The BOARD OF ZONING ADJUSTMENTS OF the CITY OF NEW ORLEANS et al.
No. 7201.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1976.
*141 William R. Pitts, Camile Jones, Thomas W. Tucker, New Orleans, for appellants.
John A. Stassi, II, of Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, for the United States Life Ins. Co. in the city of New York, respondent-appellee.
Joseph E. Berrigan, Jr., Asst. City Atty., Philip S. Brooks, City Atty., for the Bd. of Zoning Adjustments of the city of New Orleans, Edward Kurtz and the city of New Orleans, respondents-appellees.
Judge SAMUEL, GULOTTA, BOUTALL, MORIAL and SCHOTT, JJ.
BOUTALL, Judge.
This is an appeal by certain neighboring property owners from a judgment of the Civil District Court for the Parish of Orleans affirming a decision of the Board of Zoning Adjustments of the City of New Orleans which granted some five variances from the requirements of the Comprehensive Zoning Ordinance for the City of New Orleans for proposed construction of a high rise apartment complex incorporating some commercial use on a square of property. The property is square $201 bounded by St. Charles Avenue, Polymnia, Felicity and Prytania Streets. The building is to be identified as Municipal No. 1750 St. Charles Avenue.
The applicant, Simmons-Peterlynn a Louisiana Partnership in Commendam, applied to the Department of Safety and Permits for a permit to construct upon the square a proposed complex consisting of a basic building encompassing nearly the entire square, with the bottom stories to be arranged in a tiered and terraced fashion consisting mostly of commercial on the first floor, together with a parking garage and other uses, to be surmounted with two high rise towers, containing 436 apartment units. The square is Zoned C1 General Commercial, but because of the proposed preponderant residential use, the structure is governed by the zoning regulations for RM4 Multiple Family Residential District as set forth in Article 5, § 6 of the Comprehensive Zoning Ordinance. The Director of the Department of Safety and Permits denied the application for the following reasons:
Insufficient lot area, insufficient side yard area, insufficient front yard area, insufficient loading spaces and insufficient open space.
The applicant then appealed to the Board of Zoning Adjustment for a waiver or variation from the requirements of the Comprehensive Zoning Ordinance. Several hearings were held on the application by the Board, and the Board visited the premises to make personal inspection of the area. During the course of these proceedings, it developed that the Board announced that it could not approve a project containing 436 dwelling units and accordingly the applicant reduced its request to 360 dwelling units, mainly by removing several stories of the proposed high rise towers. Additionally, the applicant amended its proposal to meet with certain Environmental Design and recommendations of the Mayor's Aesthetics Review Committee. As thus amended, after a final public hearing, the Board granted the application for waiver of the requirements directing the Department of Safety and Permits to issue the necessary building permit. The opponents, neighborhood property owners, then applied for a writ of certiorari to the Civil District Court, which affirmed the decision of the Board, and they now have appealed to us.
*142 The appeal to this Court rests basically upon two major issues: (1) That under the statutory law and city ordinances, the Board had no authority to consider the amended plan, and (2) that the decision of the Board is arbitrary, and not in accordance with the evidence presented and the applicable law. Although the appellants have raised several serious procedural objections worthy of consideration, because of our conclusions that the Board is in error in granting the proposed variances, and the circumstances surrounding this case indicating that a speedy determination of the merits of the controversy will be beneficial to all parties and to the City of New Orleans in general, we will not here determine the procedural aspects of the case. Accordingly, we pass to consideration of the merits.
At the outset it may be well to point out that the true issue here is not whether a project such as the proposed complex can be built at all, but whether this particular structure which exceeds the requirements of the Zoning Ordinance, is entitled to a variance from those requirements. To put it another way, the Board was of the opinion that the proposed complex would be beneficial to the growth of this city and to the proper development of the downtown business district and this particular area of St. Charles Avenue. We have no quarrel with that finding. Additionally, the Comprehensive Zoning Ordinance permits the type of usage here proposed, and it is axiomatic that a landowner may use his property in any legal method unless it is restricted in some manner by law. The narrow issue is that this applicant desires to exceed those limitations imposed upon him by law, and only the necessity of relief from these limitations is before us.
The precise points of variance sought under the amended application are as follows:
(1) Density or minimum lot area per family; the Ordinance requires 400 square feet per dwelling unit, permitting a maximum of 324 dwelling units, but the application seeks 360 dwelling units.
(2) The floor area ratio is required to be four or less, and the applicant seeks a ratio of 4.5;
(3) The front yard, rear yard and side yard requirements are 20', 20 and 10' respectively, and the applicant proposes 27', 20' and 12'at the first level set back or 27', 5' and 4' at ground level;
(4) Offstreet loading: The Ordinance requires 8 spaces, and the applicant provides 4 spaces;
(5) Open space ratio: The Ordinance requires a ratio of 0.10 or 12,967 sq. ft., and the applicant provides 0.0923 or 11,970 sq. ft.
The authority of The Board of Zoning Adjustments is both statutory and by City Ordinance, and while it has the authority to consider such variances as proposed and grant the relief prayed for, that authority is not unlimited. The statutory law is LSA-R.S. 33:4727, which we quote in pertinent part:
"§ 4727. Board of adjustment; membership, powers, and procedure; appeals from decisions
"The local legislative body may provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of R.S. 33:4721 through R.S. 33:4729 may provide that the board may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules contained therein.

* * * * * *
"3. In passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, to vary or modify the application of any of the regulations or provisions of the ordinance *143 relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.

* * * * * *
In accordance therewith the City of New Orleans by virtue of Ordinance 4264 M.C.S. has adopted a Comprehensive Zoning Ordinance for the City of New Orleans and Article 13 thereof provides for the Board of Zoning Adjustments.
In contest here is the authority of the Board to grant variances under § 11 of Article 13, which we quote in pertinent part:
"Section 11. Variances.
"Consistent and in accord with the provisions of Article 15, Section 2.3 of this Ordinance, the Board shall have the power to grant the following variances:
1. A variation in the yard, lot width, depth or frontage, lot area per family, spacing of buildings, floor area ratio, open space ratio and parking requirements in any district so as to relieve practical difficulties or particular hardships in cases when and where, by reason of exceptional narrowness, shallowness, or shape of a specific property at the time of the enactment of such regulation or restriction or by reason of exceptional topographical conditions or other extraordinary and exceptional situations or conditions of such property, the strict application of such regulation or restriction would result in peculiar and exceptional practical hardship upon the owner of such property. Such grant or variance shall comply, as nearly as possible, in every respect with the spirit, intent, and purpose of this ordinance and the granting of a variation shall be only for reasons of demonstrable and exceptional hardship as distinguished from variation sought by applicants for purposes or reasons of convenience, profit, or caprice."
Article 15, § 2.3 further delineates the standards for variances.
"Variances, the Board of Zoning Adjustments.
"The purpose of the `Variance' provision permits an applicant to apply for relief from the requirements of the letter of the Ordinance when unnecessary hardship or practical difficulty exists. The Board of Zoning Adjustments shall authorize Variances in harmony with the general purpose and intent of this Ordinance, consistent and in accord with the provisions of Article 13, Section 11 of this Ordinance, and also in accordance with the standards and procedures hereafter prescribed:
"1. Standards for Variances. The Board of Zoning Adjustments shall not authorize a Variance from the requirements of this Ordinance unless it shall make findings based upon the evidence presented to it that each special case shall indicate all of the following:
a. Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning district.
b. Literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Ordinance.
c. The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest in the property.

*144 d. Granting the Variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures, or buildings in the same district or similarly situated.
e. The Variance, if granted, will not alter the essential character of the locality.
f. If the strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner as distinguished from mere inconvenience.
g. The purpose of the Variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party(s).
h. The granting of the Variance will not be deterimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.
i. The proposed Variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public streets, or increase the danger of fire, or endanger the public safety.
"2. Variances from this Ordinance. Variances from this Ordinance shall be in accordance with the standards and conditions of this section, and may be granted only in the following instances:
a. To permit any yard, lot width or frontage less than the yard, lot width or frontage required.
b. To reduce the requirement for lot area per family.
c. To allow a floor area ratio greater than that permitted.
d. To reduce off-street parking or loading requirements.
e. To reduce the requirements for space between buildings.
f. To allow an open space ratio smaller than that permitted.
In our application of the facts of this case to the law above stated, we first call attention to the fact that the property in question is an entire city square of almost perfect rectangular shape. The parcel of ground consists of 2.977 acres or an area of 129,676.6 sq. ft. The only irregularity is a slight indentation caused by the angling of the street on the Felicity Street side, however the record does not reflect that this is the cause of any problems in connection with the variances sought here. We note that the application has requested a variance for almost every requirement of the regulations. The applications for variance and the statements made before the Board make it clear to us that the principal grounds for the variance request is based on the economics of the project and considerations relating to the convenience of the developers. Despite the finding of the Board that "* * * * actually, under present day conditions, it has been pointed out that it will be a practical difficulty to develop the site other than as submitted under this `revised plan'. * * *" the only practical difficulty we can find in the record is that alluded to by the applicant stating it will be difficult obtaining financing for the project unless the property could be used as proposed. There is no proof offered of this statement nor is there any evidence of any other hardship that will be suffered if the applicant is denied the over-limit dwelling units. It is clear that the only reason for the increase in dwelling units above the Ordinance requirements, resulting in a violation of the minimum lot area family, increased floor area ratio and decreased open space ratio is the ease in financing based upon an anticipated increase in revenue by the use of *145 the property beyond the limitations of the Ordinance.
We recognize that each zoning case should be considered on its own merits, and we are of the opinion that our conclusions above are decisive of this case. We refer to the cases of State ex rel Phillips v. Board of Zoning Adjustments for the City of New Orleans, 197 So.2d 916 (La.App.4th Cir. 1967) and State ex rel Korns v. Board of Zoning Adjustment of the City of New Orleans, 223 So.2d 505 (La.App.4th Cir. 1969). These cases arose under the prior Ordinances of the City of New Orleans, but we consider that the rationale therein expressed applies to the facts and circumstances of this case.
The Zoning Ordinance provides that the granting of a variation shall be only for reasons of demonstrable and exceptional hardship as distinguished from variations sought by applicants for purposes or reasons of convenience, profit, or caprice. The Board has erred in its application of the terms of this provision of the Ordinance to the facts in the present case. Article 15 § 2.3 requires the Board to deny variance unless the applicant meets all of the standards of variance, and in this case the standards provided in Sub-section If. and Ig. have not been met.
In reaching our conclusion above, we have only discussed the evidence as it relates to three of the variances requested. In connection with back and side yard set back and the lack of sufficient loading space, there is some evidence in the record to support the Board's findings in connection therewith. Certainly there is sufficient evidence to require the opponents to affirmatively show some countervailing evidence that those variances would not be proper. However, this project comes to us as a unified plan, and there is insufficient evidence in the record to reflect how we could properly separate the requests. Under the circumstances herein, we consider the application as a unified whole, and concluded that the entire application should be rejected.
Accordingly for the reasons above assigned, the judgment of the Civil District Court appealed from is reversed; the decision of the Board of Zoning Adjustments of the City of New Orleans is reversed and annulled, and judgment is entered denying the application for variances.
We further find that the Board did not act with gross negligence, or in bad faith or with malice in making the decision appealed from and hence costs shall not be allowed against the Board. R.S. 33:4727. Accordingly we assess all costs against intervener-appellees.
Reversed.
GULOTTA, Judge (dissenting).
I am not in agreement with the conclusion reached by the majority that standards for variance, Article 15, § 2.3(1)(f) which reads:
"If the strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner as distinguished from mere inconvenience."
and (1)(g) which reads:
"The purpose of the Variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party(s)."
were not met.
When these two provisions are read together, it appears that in order for a variance to be granted and to be in accordance with (f) and (g), it is necessary that the property owner must show a "demonstrable hardship" not based "exclusively upon a desire to serve the convenience or profit of the property owner" (underline ours).
The Board of Zoning Adjustments in its reasons for granting the variance stated:
"WHEREAS, in relation to the variation in lot area per family, there is unquestionably a need for attractive apartments *146 located close to the Central Business District. The thirty-six additional units herein permitted will in no manner create congestion in the public streets, in any manner affect the public health or welfare, and at the same time will permit development of an unusual plot of ground in an area close to the Central Business District. Attempts to develop this site have on several occasions been unsuccessful. Development of this unusual site will be good for the City of New Orleans as a whole. Actually, under present day conditions, it has been pointed out that it will be a practical difficulty to develop the site other than as submitted under this `revised plan';"
From a reading of these reasons, it seems clear that the granting of the variance was not based "exclusively" for convenience or profit of the property owner. Other valid considerations entered into the reasons why the variance was granted. As was stated in Times Picayune Publishing Corporation v. City of New Orleans, 316 So.2d 147 (La.App.4th Cir. 1975), ". . . almost all matters coming before a zoning tribunal have some financial implications". Unquestionably, there are financial implications in the request for the variance by the owners in the instant case. This, however, while a consideration, is not the exclusive basis for the variance.
The responsibility of the Board of Zoning Adjustments is to make allowance for variances based upon practical considerations which are not detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located. Because the property in question occupies an entire square, the side, rear and front yard requirements serve no purpose insofar as adversely affecting any neighbors. There are no neighbors in the square to be adversely affected. The variance in height requirements and loading platform requirements has not been demonstrated in the record to be detrimental or injurious to the welfare of property owners in the neighborhood. More apparent from the record and from the reasons assigned by the Board of Zoning Adjustments is that the neighboring owners, and the neighborhood in general, will benefit from the construction as proposed by the property owners in the instant case.
The test for reversal of a decision of an administrative body, such as the Board of Zoning Adjustments, is whether or not the decision of the Board was capricious, arbitrary or not based on reason. See LSAR.S. 49:964(5); Times Picayune Publishing Corporation v. City of New Orleans, supra; Thornton v. F. Strauss & Son, Inc., 240 La. 455, 123 So.2d 885 (1960); River Oaks-Hyman Place Homeowners Civic Association v. City of New Orleans, 288 So.2d 420 (La.App.4th Cir. 1974), writ refused, 290 So.2d 909 (La.1974).
Because I am of the opinion that the Board of Zoning Adjustments based its decision on reason and not arbitrariness, I am of the opinion that the decision of the trial court upholding the conclusions of the Board of Zoning Adjustments permitting the variance should be affirmed. Accordingly. I respectfully dissent.