481 So.2d 162 (1985)
LAKESHORE PROPERTY OWNERS ASSOCIATION and Frank Rabito
v.
CITY OF NEW ORLEANS, ZONING BOARD OF APPEAL AND ADJUSTMENTS and Mrs. Ralph C. Lally, II.
No. CA-3542.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 1985.
As Corrected on Denial of Rehearing January 27, 1986.
Writ Denied March 21, 1986.
*163 Salvador Anzelmo, City Atty., Karen Milner, Deputy City Atty., New Orleans, for defendant/appellant City of New Orleans.
Russ M. Herman, David J. Calogero, Herman, Herman, Katz & Cotlar, New Orleans, for defendant/appellant Mrs. Ralph C. Lally, II.
*164 Victoria Lennox Bartels, Wessel, Bartels & Ciaccio, New Orleans, for plaintiff/appellee Lakeshore Property Owners Asso.
Frank Rabito, New Orleans, La. in pro. per.
Before SCHOTT, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
This appeal arises out of a dispute between Ralph C. Lally, II (Lally) and the Lakeshore Property Owners Association (LPOA) and Frank Rabito (Rabito) over the Board of Zoning Adjustments' (BZA) November 12, 1982 grant to Lally of a variance from minimum rear yard and height requirements imposed under the West Lakeshore Subdivision Building Restrictions and the Comprehensive Zoning Ordinance of the City of New Orleans.
This variance allowed Lally to construct an addition to his 200 Lakeshore Parkway residence. The LPOA and Rabito appealed the BZA decision to the Civil District Court for the Parish of Orleans pursuant to the provisions of La.R.S. 33:4727.
On December 11, 1984, Ralph C. Lally, II was killed in an automobile collision and his wife, Mrs. Ralph C. Lally, II was substituted as the real party defendant pursuant to Louisiana Code of Civil Procedure Article 801.
On January 29, 1985, the Civil District Court for the Parish of Orleans, Honorable Steven R. Plotkin, rendered judgment reversing the BZA decision to grant the variance and ordered Mrs. Lally to remove the addition to her 200 Lakeshore Parkway residence. From this judgment Mrs. Lally appeals.
FACTS:
On June 28, 1982, Mr. & Mrs. Ralph C. Lally, II purchased a residence at 200 Lakeshore Parkway, located in the West Lakeshore Subdivision of the City of New Orleans. When it was originally subdivided by the Orleans Parish Levee Board, in order to preserve the value, beauty and integrity of the area, a set of title restrictions affecting the entire subdivision, including 200 Lakeshore Parkway, was created and recorded. The record clearly reveals that the Act of Sale by which Lally acquired title to the property reflects the existence of the title restrictions dated February 29, 1952, as amended, May 2, 1956 and properly registered in the Conveyance records of the Parish of Orleans.
These restrictions place limits upon the height of construction and also require certain minimum rear, front and side yard measurements. The Comprehensive Zoning Ordinance for the City of New Orleans also provides restrictions concerning the permissible height of structures as well as minimum rear, front and side yard measurements in the subject area.
On September 10, 1982, Lally submitted to the Orleans Parish Levee Board (OPLB) plans for a proposed addition to the residence. It was then, and still is, the policy of the Department of Safety and Permits (DSP) for the City of New Orleans to require an owner of property in the West Lakeshore Subdivision to obtain prior approval of the OPLB verifying compliance with the title restrictions as a condition precedent to obtaining a permit for construction.
By his own admission, Lally was made aware at the time of submitting his plans to the OPLB of the violations of the title restrictions contained in his proposed plans. Lally obtained the approval of the OPLB by agreeing to change his plans to conform with the title restrictions. The required change entailed moving the addition an additional nineteen (19) feet off the rear property line. As evidence of his agreement to comply, Lally wrote upon the plans he submitted to OPLB the following:
"Addition to existing house will be moved to comply with Lakeshore building restrictions."
Lally signed and dated this statement September 10, 1982. The approval letter was then issued to Lally by the OPLB conditioned upon Lally's abiding by the agreement outlined in the statements so written upon the plans of the addition.
*165 After obtaining the conditional approval of the OPLB, Lally's builder Allen Bourgeois, on September 13, 1982, applied for a building permit with the Department of Safety and Permits. The plans submitted contained the above quoted statement signed by Lally indicating his intention to move the construction back an additional nineteen (19) feet off the rear property line. Lally was issued a permit by the DSP upon the basis of the plans as modified.
On September 16, 1982, Lally began construction. On October 7, 1982, the DSP issued to Lally a "Notice of Zoning Ordinance Violations". Lally had, in fact, followed the original plans without making the agreed upon changes to bring the addition into compliance with both the title restrictions and the zoning ordinance. The violation of the title restrictions involved construction nineteen (19) feet beyond and into the minimum required rear yard of twenty (20) feet. Violations of the Zoning Ordinance involved not only the encroachment on the required rear yard, but also a four (4) foot excess over the maximum twenty (20) foot height limitation. On October 8, 1982, the DSP issued to Lally a "Cease and Desist Order". Lally then filed an application for variance with the BZA. A hearing was held on November 8, 1982. The LPOA, thru its president, James Fried, Jr., and Frank Rabito appeared at the hearing to oppose the application.
Following the hearing, the BZA granted the variance with slight modifications. In its reasons for judgment, the Board stated only that there was "sufficient evidence" upon which to base their findings on each of the points required by the Comprehensive Zoning Ordinance. The BZA did not make specific findings of fact with respect to those points.
Aggrieved by the decision of the BZA to grant the variance, the LPOA and Rabito filed an Application for Writs of Review with the Civil District Court for the Parish of Orleans on December 7, 1982, pursuant to La.R.S. 33:4727.
After an initial briefing and hearing on the Application for Writs of Review, judgment was rendered granting to each side the right to take additional evidence by deposition because the trial court felt the "informality" of the proceedings before the BZA required that each side be given the opportunity to present its evidence. The LPOA and Rabito secured the depositions of Ralph C. Lally, II; Paul May, Zoning Administrator of the Department of Safety and Permits of the City of New Orleans, Earl Magner, chief engineer of the Orleans Parish Levee Board; Robert B. Anderson, the civil engineer hired by Lally to seal his approval of the plans.
The hearing on the Writs of Review was held December 10 and December 20, 1984. On January 29, 1985, judgment was rendered reversing the decision of the BZA to grant the variance as arbitrary, capricious and not based on sufficient evidence. The district court found Lally misrepresented facts before the BZA, acted in bad faith and failed to prove compliance with the nine (9) legal requirements necessary to obtain a variance, except that the addition did not increase the density of the area. The district court ordered Mrs. Lally to remove the addition from her 200 Lakeshore Parkway residence. From this judgment both Mrs. Lally and the City of New Orleans have appealed asserting the following specifications of error:
1) The district court erred by reopening the case for the taking of depositions under the authority of La.R.S. 33:4727.
2) The district court committed error in finding that Lally's alleged misconduct was not before the Board of Zoning Adjustments.
3) The district court committed error in finding that Lally practiced fraud and deception upon the Orleans Parish Levee Board and the Department of Safety and Permits in obtaining his building permit.
4) The district court erred in exceeding the proper scope of review or evidence adduced at the hearing before the Board of Zoning Adjustments and in overturning the findings of the Board *166 that all nine (9) standards for variance had been met.
5) The district court erred in failing to find that the Lakeshore Property Owners Association and Rabito have allowed repeated violations of the same building restrictions sought to be enforced go unrestrained, and therefore under the "clean hands" doctrine should not have been allowed the relief sought.
6) In the alternative, the district court erred in its judgment rendered January 29, 1985, ordering Mrs. Lally to remove the addition rather than bring it into compliance.
SPECIFICATION OF ERROR 1:
La.R.S. 33:4727(E)(4) specifically authorizes the Court, in its own discretion, to entertain additional evidence whenever the Court is of the opinion that it is warranted. We have reviewed the record of the hearing before the BZA and are in agreement with the trial court that additional evidence was not only proper, but necessary in this case. The "hearing" before the BZA contains no evidence other than statements made by persons or their representatives who either opposed or supported the requested variance. We find no abuse of discretion by the trial court in this regard.
Mrs. Lally also asserts that the decision by the Court to take the additional evidence by way of deposition rather than live testimony was error. La.R.S. 33:4727(E)(4) neither prohibits nor mandates that the additional evidence be taken by deposition. Although the question is arguable, we need not reach a conclusion as Lally failed to object to the taking of depositions at the time of the order, and as such, waived the right to any appeal which might be based on such alleged error. The law of this court has always required that parties litigant who consent to the taking of depositions cannot later object to their use. Stevens v. Gaude, 9 La.App. 664, 120 So. 79 (4th Cir.1928).
This specification of error is without merit.
SPECIFICATION OF ERROR 2:
Mrs. Lally argues that the district court committed error by entertaining additional evidence as to Mr. Lally's alleged misrepresentations alleging that the issue had already been raised before the BZA and had been considered. The law is clear that a party allegedly aggrieved by the decision of an administrative agency who preserves his right in accordance with applicable provisions of law is entitled to judicial review which, within the sound discretion of the trial court, includes the right to expand the record made up in the administrative hearing. Times Picayune Publishing Corp. v. City of New Orleans, 316 So.2d 147 (La.App. 4th Cir.1975).
La.R.S. 33:4727 is the applicable law which provides appellees their right to judicial review. The language of La.R.S. 33:4727(E)(4) places no restrictions upon the discretion of the court as to what types of additional evidence may be needed:
"If upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence ..."
At the initial briefing hearing, the court made specific reference to the claims that Lally secured his permit through misrepresentation. While the issue was raised before the BZA, they did not consider the conduct of Lally in obtaining the permit, nor was there any evidence presented on that issue. Lally refused to testify before the BZA. No questions were directed to Lally by the BZA, and Rabito was not allowed to question Lally.
In its reasons for judgment, the lower court refers to Rabito's efforts to raise the issue of misrepresentation before the BZA and recognizes that he was not permitted to do so. In addition, the Court noted that the record failed to indicate whether the BZA even considered the issue in arriving at its decision. We find no abuse of discretion in the court permitting the taking of evidence as to Lally's misrepresentation which was properly before the *167 BZA at its hearing but which it chose to ignore.
This specification of error is without merit.
SPECIFICATION OF ERROR 3:
Mrs. Lally asserts that the district court erred, as a matter of law, in finding Lally in bad faith as a direct result of its misapplication of La.R.S. 33:4727(E)(4) by passing judgment on Lally's motives and intent thru deposition testimony without having observed him live on the witness stand.
As a matter of law, there may be some merit to this argument. However, based on our review of the depositions (the same evidence reviewed by the trial court) we find no error in the court's finding that there was misrepresentation on the part of Lally or his builder Bouregois. The facts are undisputed that the approval from OPLB was conditioned on the written notation of Lally on the plans that he would comply with the title restrictions. That same plan was used by Bourgeois in obtaining the building permit from the City. At the very least, it (the plan) expressed an intent by Lally to comply with the title restrictions. If he had, he would not have violated existing zoning requirements. The fact that Lally claims he was told by Bourgeois that the DSP clerk (Harrison) said the conditions were not necessary, carries very little weight with this court in view of the fact that neither Bourgeois nor Harrison testified. If this alleged statement were in fact made, Lally should have at least made an attempt to clarify the problem prior to construction.
We cannot say that a finding of, at least, misrepresentation on the part of Lally was error. He agreed to conform (as evidence by his plans) and he did not. The city was correct in issuing the "Cease and Desist Order" when it did.
SPECIFICATION OF ERROR 4:
Mrs. Lally asserts that the district court erred in exceeding the proper scope of review of evidence adduced at the hearing of the BZA and in overturning the findings of the BZA that all nine (9) standards for variance had been met.
While it is true that the actions of the BZA are afforded a presumption of regularity and a court should not merely substitute its own judgment for that of the Board, Phillips v. Board of Zoning Adjustments of City of New Orleans, 197 So.2d 916 (La.App. 4th Cir.1967), this Court has consistently held that the actions of the Board are subject to judicial review and must fall within the limited authority granted to the Board by law and must be based upon sufficient and competent evidence. State ex rel. Pitts v. Board of Zoning Adjustments, 327 So.2d 140 (La. App. 4th Cir.1976); State ex rel. Korns v. Board of Zoning Adjustments of New Orleans, 223 So.2d 505 (La.App. 4th Cir.1969); State ex rel Phillips v. Board of Zoning Adjustments, 197 So.2d 916 (La.App. 4th Cir.1967).
La.R.S. 33:4727 is the statutory authority under which the BZA is granted its power to entertain applications for variance from the requirements and restrictions of the Comprehensive Zoning Ordinance. La.R.S. 33:4727 provides in pertinent part:
"... that the board may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules contained therein ..." (emphasis added).
The Comprehensive Zoning Ordinance, Article 5, Section 1.1 provides that in areas zoned R.S.-I, the "general purpose" to which the statute refers is "to provide for low density, residential development of relatively spacious character together with such churches, recreational facilities and accessary uses as may be necessary or are normally compatible with residential surroundings."
Article 13, Sec. 10.3 and Sec. 11 and Article 15, Sec. 2.3 subsections (1) and (2) of the Comprehensive Zoning Ordinance refer to the general or specific rules governing the granting of a variance to which the statute refers. Sections 10.3 and 11 provide that a variance from height limitations *168 and yard requirements may be granted but only for the purpose "to relieve practical difficulties or particular hardships `caused by' exceptional narrowness, shallowness, or shape of a specific property ... or by reason of exceptional topographical conditions or other extraordinary and exceptional situations or conditions of such property." The difficulty or hardship caused by the unusual shape or dimensions of the property must be both "peculiar" and "exceptional". Finally, the variance must be "for reasons of demonstrable hardship" rather than for the "convenience, profit, or caprice of the applicant."
By definition, a variance is a method of granting an exception to a general rule which, if applied literally and strictly, would deny an owner the beneficial use of his property. State ex rel. Maple Area Residents, Inc. v. Board of Zoning Adjustments, 365 So.2d 891, 894 (La.App. 4th Cir.1978). The factors to be considered in determining the propriety of the variance are the physical characteristics of the property and the use to which it may be put under the ordinance. CZO Article 13: Sec. 10.3, Sec. 11; CZO Article 15: Sec. 2.3(1).
While the property in question is slightly irregular in shape, not being a perfect rectangle, Lally presented no evidence that this irregularity contributed in any way to his request for a variance. The evidence showed that the addition is located on the rear portion of the property which is regular in shape. The rear line measures seventy four (74) feet and is straight. Thus this prerequisite for granting a variance is inapplicable. Pitts, supra; State ex rel Korns v. Board of Zoning Adjustments, supra.
The primary permitted "use" in areas zoned RS-I, and the only one applicable to 200 Lakeshore Parkway, is a detached single-family residence. The record discloses that Lally sought to modify and add to the structure in ways which do not conform to the zoning ordinance solely for his convenience and not because of sufficient hardship or exceptional topographical condition of the property which would warrant a variance. See: Nassau Realty Co. v. City of New Orleans, 221 So.2d 327 (La. App. 4th Cir.1969); State ex rel Phillips v. Board of Zoning Adjustments, supra. For this reason alone we feel the granting of the variance was improper.
In addition to meeting the above requirements, the applicant must present sufficient evidence that the physical characteristics and use of the property conform to each of nine (9) standards for variance mandated in Article 15, Sec. 2.3(1) of the Comprehensive Zoning Ordinance.[1]
*169 We agree with the trial court's conclusion that Lally failed to show that his need for a variance conformed to all nine (9) standards for variance. A careful review of the record discloses:
1) that the "special" and "peculiar" condition was created by Lally as a direct result of his own misrepresentation, or at the very least, his own misunderstanding;
2) that there was insufficient evidence presented to show that other properties were in violation of any building restrictions or zoning ordinances in the subdivision;
3) that Lally's misrepresentations created the "special conditions" of which he complained;
4) that Lally failed to provide any evidence to substantiate his claim that six other properties out of conformity were granted permits;
5) that not only is economic hardship alone not a factor to be considered for granting a variance, Times Picayune Publishing Corp. v. City of New Orleans, supra, but Lally's tribulations were of his own creation.
6) that the variance infringes upon the height, air, aesthetics and privacy of the contiguous landowner, Rabito in derogation of the purpose that is recognized and protected by laws, zoning ordinances and building restrictions;
7) that no evidence was offered to negate the environmental impact on adjacent private or public property.
Lally only met his burden of proof in showing that the addition would not alter the zoning density requirement of the area.
The record before the BZA contains no evidence of any unusual physical characteristic of a topographical nature requiring the necessity for a variance; nor does the record disclose any possible grounds upon which to base a finding of "peculiar" or "exceptional" hardship; nor was sufficient evidence presented upon which to conclude that all nine (9) variance requirements of Article 13, Sec. 2.3(1) of the CZO were met. The additional evidence obtained in the trial court's proceedings substantiates this conclusion.
This specification of error is without merit.
SPECIFICATION OF ERROR 5:
The only evidence in the record with respect to "other violations" are the assertions of Lally's counsel before the BZA and a number of photographs presented to the board. Lally called no witnesses before the BZA to support this assertion. There was no testimony adduced concerning measurements of the photographed properties; nor was there any indication to what degree it was alleged that the construction thereon violated either the title restrictions or the zoning ordinance. Furthermore, there was no evidence that either the LPOA or Rabito had any knowledge of any violative conditions alleged at those addresses and failed to take any action.
This specification of error is without merit.
SPECIFICATION OF ERROR 6:
Mrs. Lally asserts that it was error for the district court to order her to remove the addition to her home. We agree with her in this regard.
The building restrictions and requirements of the Comprehensive Zoning Ordinance and the West Lakeshore Subdivision do not prohibit construction of an addition to Mrs. Lally's home but merely limit the height and property positioning of such a structure. Therefore, the judgment of the district court ordering her to remove the addition violates her right to use her property even within compliance with the zoning ordinance and subdivision restrictions. With the proper permit from DSP she should not be required to remove those portions of the addition that are not violative of title or zoning restrictions.
For the above and foregoing reasons the judgment of the lower court is affirmed in all respects, except that Mrs. Lally, in her *170 capacity as representative of the estate of Ralph C. Lally, is ordered to remove those portions of the addition that are in violation of the title restrictions of West Lakeshore Subdivision, and the Comprehensive Zoning Ordinance of the City of New Orleans, provided she obtains the necessary permit for the remainder of the structure.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Article 15, Sec. 2.3(1) of the CZO provides:

1. Standards for Variances. The Board of Zoning Adjustments shall not authorize a Variance from the requirements of this Ordinance unless it shall make findings based upon the evidence presented to it that each special case shall indicate all of the following:
a. Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning district.
b. Literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Ordinance.
c. The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest in the property.
d. Granting the Variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures, or buildings in the same district or similarly situated.
e. The Variance, if granted, will not alter the essential character of the locality.
f. If the strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner as distinguished from mere inconvenience.
g. The purpose of the Variance is not based exclusively upon a desire to serve the convenience of profit of the property owner or other interested party(s).
h. The granting of the Variance will not be detrimental to the public warfare or injurious to other property or improvements in the neighborhood in which the property is located.
i. The proposed Variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public streets, or increase the danger of fire, or endanger the public safety.